UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Yashi II, LLC, | |
|     Plaintiff, | 2:15-cv-00866 JWS |
|     vs. | ORDER AND OPINION |
| Yashi Fine Foods LLC, | [Re: Motion at Docket 9] |
|     Defendant. | |

## I.  MOTION PRESENTED

At docket 9, defendant Yashi Fine Foods LLC ("Yashi Foods") moves pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the complaint of plaintiff Yashi II ("Yashi II"). Yashi II responds at docket 11. Yashi Foods replies at docket 12. Oral argument was heard on November 20, 2015.

## II.  BACKGROUND

This case presents a dispute over a license to sell gourmet sauces. According to Yashi II's complaint, Yun Weldon ("Weldon") is the founder of Yashi Foods, a company that sold a trademarked product known as "Sweet & Tangy Gourmet Wing" sauce until "at least 2013."[1] In 2014 two investors, Mark H. Tynan ("Tynan") and Steve C. Froemming ("Froemming"), approached Weldon to form a new company called Yashi II,

---

[1] Doc. 1 at 2-3. Weldon is also known as Kay Weldon. *Id.* at 2 ¶ 7.

with Yashi Foods owning 60% and Tynan and Froemming each owning 20%.[2] Yashi II's operating agreement states that Yashi II was formed for the purpose of developing, selling, marketing, and distributing food products based on Yashi Foods' recipes.[3] Between January and July 2014, Yashi Foods and Yashi II "jointly developed, at Yashi II's expense, recipes for at least five additional sauces, including 'Teriyaki' sauce; 'Tangy Orange' sauce; 'Korean Style BBQ' sauce; 'Hot and Spicy' sauce; and 'Green Chili' sauce."[4]

In October 2014 Yashi II added an addendum to its operating agreement that states that Yashi II will pay Yashi Foods $2,000 "and/or up to $6,000 per month" in exchange for a license to use Yashi Foods' "Yashi" brand name and recipes.[5] Yashi II did not make any of these license payments, however, and in March 2015 Yashi Foods resigned as a member of Yashi II.[6] The remaining members bought out Yashi Foods' interest in Yashi II for $2,500.[7] Yashi Foods then informed Yashi II that it was terminating the license.[8]

Yashi II sued Yashi Foods for breach of contract and tortious interference with business relations. Yashi II also seeks a declaratory judgment that the license remains valid and enforceable. Yashi Foods moves to dismiss Yashi II's complaint in its entirety.

---

[2] Doc. 1 at 3; Doc. 1-2 at 12.

[3] Doc. 1-2 at 2 § 1.4.

[4] Doc. 1 at 4 ¶ 24.

[5] Doc. 1-3 at 2.

[6] Doc. 1 at 7 ¶¶ 51-54.

[7] *Id.* at 7 ¶¶ 53-54.

[8] Doc. 1 at 10 ¶ 75.

### III.  STANDARD OF REVIEW

Rule 12(b)(6) tests the legal sufficiency of a plaintiff's claims.  In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[9]  To be assumed true, the allegations "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."[10]  Dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[11]  "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."[12]

To avoid dismissal, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face."[13]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14]  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[15]  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[16]  "In sum, for a complaint to survive a motion to dismiss, the

---

[9] *Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

[10] *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

[11] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[12] *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[13] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[14] *Id.*

[15] *Id.* (citing *Twombly*, 550 U.S. at 556).

[16] *Id.* (quoting *Twombly*, 550 U.S. at 557).

non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[17]

## IV.  DISCUSSION

Yashi Foods argues that Yashi II's complaint should be dismissed because the at-issue license is of indefinite duration and therefore terminable at will under Arizona law.  Because each of Yashi II's three claims is premised on a finding that Yashi Foods had no right to terminate the license, Yashi Foods argues, Yashi II's complaint fails to state a claim.[18]  Yashi II responds by asserting that the lease has a definite duration of 25 years and, even if not, Yashi Foods is misinterpreting Arizona law.

**A.     In Arizona, Contracts of Indefinite Duration are Terminable at Will**

"[T]he law of some states provides that a license without a stated term is terminable at the will of either party upon reasonable notice."[19]  Yashi Foods argues that Arizona law is in accord, and cites various authorities that establish that contracts of indefinite duration are terminable at will.[20]  Yashi II argues that these authorities are not

---

[17]*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *see also Starr*, 652 F.3d at 1216.

[18]Doc. 9 at 5.

[19]3 *McCarthy on Trademarks and Unfair Competition* § 18:43 (4th ed.) (compiling cases). *See, e.g., Trace Minerals Research, L.C. v. Mineral Res. Int'l, Inc.*, 505 F. Supp. 2d 1233, 1241 (D. Utah 2007) ("A license containing no time frame is generally terminable at will."); *Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*, 847 F. Supp. 18, 20 (E.D.N.Y. 1994) ("An agreement conferring a license to use a trademark for an indefinite time, whether oral, written or by implication, is terminable-at-will by the licensor.") (citing ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 96, at 413 (1963); *Robert B. Vance & Assoc. v. Baronet Corp.*, 487 F.Supp. 790, 799 (N.D.Ga.1979)).

[20]*See Builders Supply Corp. v. Shipley*, 341 P.2d 940, 941 (Ariz. 1959) ("[W]here a contract for personal services contains no time limit it may be terminated by either party . . . ."); *Ulan v. Vend-A-Coin, Inc.*, 558 P.2d 741, 745 (Ariz. 1976) ("'The only remedy against the possibility of competitive inducement to terminate an at-will relationship is to provide for a contract of extended and definite duration.'") (quoting *Noah v. L. Daitch & Co.*, 192 N.Y.S.2d 380, 386 (N.Y. Sup. Ct. 1959)); *Duncan v. St. Joseph's Hosp. & Med. Ctr.*, 903 P.2d 1107, 1111 (Ariz. Ct. App. 1995) ("The general rule is that an employment agreement of indefinite duration is presumed to be terminable at will by either party with or without cause."); A.R.S. § 47-2309(B) ("Where the contract provides for successive performances but is indefinite in

persuasive because they do not involve contracts for the license of intellectual property.[21] But because Yashi II fails to cite any cases in support of this argument or articulate a reason why intellectual property licenses should be treated different than other contracts, this argument lacks merit.[22]

**B.     Whether the License Has a Definite Duration Is a Question of Fact**

The threshold question before the court is whether Yashi Foods granted Yashi II a license of indefinite duration. This requires the court to interpret the parties' contract. Contract interpretation presents a mixed question of fact and law.[23] The purpose of contract interpretation is to "ascertain and enforce the parties' intent."[24] To determine the parties' intent, courts look to the plain meaning of the contract's words in the context of the contract as a whole.[25] "When the terms of a contract are plain and unambiguous, its interpretation is a question of law for the court. If the contract language is reasonably susceptible to more than one meaning, extrinsic evidence may be admitted to interpret the contract."[26]

The addendum to the operating agreement does not specify a duration for how long Yashi II must pay Yashi Foods to use its recipes and brand name. Yashi II argues that this duration is found in Article 1, Section 2, of the operating agreement, which states that Yashi II will terminate automatically in 25 years unless its members

---

duration it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party.").

[21] Doc. 11 at 5.

[22] *See also* 1-4 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 4.2 (2015).

[23] *Johnson Int'l, Inc. v. City of Phoenix*, 967 P.2d 607, 611 (Ariz. Ct. App. 1998).

[24] *ELM Ret. Ctr., LP v. Callaway*, 246 P.3d 938, 941 (Ariz. Ct. App. 2010).

[25] *Id.* at 941-42.

[26] *Id.* at 942 (citations omitted).

unanimously agree otherwise or it dissolves sooner.[27]  Yashi Foods counters that "[t]he lifespan [sic] of the company and the duration of a license are two different concepts. And there is nothing—anywhere—that suggests that the parties ever agreed (or intended) to link them together."[28]

Because this matter is before the court in the context of a motion to dismiss, the court must construe the contract in the light most favorable to Yashi II.  When viewed in that light, the court cannot say that the license plainly and unambiguously lacks a duration—in other words, that the parties did not intend to link the life span of the company with the duration of the license.  The license agreement is found in an addendum to the operating agreement that was explicitly attached to, and incorporated into, the operating agreement itself.[29]  Further, Section 1.4 of the operating agreement states that Yashi II was created to sell food products made from Yashi Foods' recipes.[30] Based on this description, it is difficult to imagine what business Yashi II would engage in without those recipes.  The parties' agreement can be reasonably interpreted as Yashi Foods giving Yashi II a license to use its recipes for a duration of 25 years subject to change under Article 9 of the agreement.

**C.    Whether Yashi Foods' Resignation Rendered the License Terminable At Will Is Also a Question of Fact**

Yashi Foods argues that, even if the license once had a definite 25-year duration, that duration is no longer definite because it has withdrawn as a member of Yashi II, giving the remaining members unilateral power to "continue the company *ad infinitum*."[31] It argues that one reason Arizona has adopted the rule of at-will termination of indefinite

---

[27]Doc. 1-2 at 2.

[28]Doc. 12 at 2.

[29]Doc. 1-3 at 2 ("The Operating Agreement is attached and made a part of this document.").

[30]Doc. 1-2 at 2 § 1.4.

[31]Doc. 12 at 2.

contracts is because perpetual contracts, such as the one before the court, are contrary to public policy.  As the Illinois Supreme Court explained in *Jespersen v. Minnesota Min. & Mfg. Co.*,

> "Forever" is a long time and few commercial concerns remain viable for even a decade.  Advances in technology, changes in consumer taste and competition mean that once profitable businesses perish-regularly.  Today's fashion will tomorrow or the next day inevitability fall the way of the buggy whip, the eight-track tape and the leisure suit.  Men and women of commerce know this intuitively and achieve the flexibility needed to respond to market demands by entering into agreements terminable at will.[32]

In furtherance of this goal of avoiding perpetual contracts, some courts have held that contract has a definite duration only if it terminates upon the occurrence of an objective event.[33]  Neither the parties nor the court has found any Arizona caselaw that defines when a contract's duration is definite.

In *Made2Manage Sys., Inc. v. ADS Info. Sys., Inc.*,[34] the district court was confronted with a contract that lacked objective, substantive restrictions on either party's ability to terminate.  The plaintiff argued that this rendered the contract's duration indefinite, and therefore terminable at will.  The court disagreed, holding that "it would be illogical to mechanically apply" the general rule that contracts of indefinite duration are terminable at will "when doing so would contravene the parties' intent.  Under

---

[32]700 N.E.2d 1014, 1017 (Ill. 1998).  *See also Trient Partners I Ltd. v. Blockbuster Entm't Corp.*, 83 F.3d 704, 709 (5th Cir. 1996) ("We will not hold that a contract is definite in duration when it (1) expressly states that it will 'continue indefinitely,' and (2) is confined in time only by 'termination provisions' which contain conditions that are likely never to transpire.  If we were thus to hold, Trient could very well be forced by Blockbuster to stay in the video rental and sales business, and operate Superstores, in perpetuity.  This is precisely the antithetical result that courts seek to avoid by holding indefinite duration contracts to be terminable at will.").

[33]*See Burford v. Accounting Practice Sales, Inc.*, 786 F.3d 582, 586 (7th Cir. 2015) (citing *R.J.N. Corp. v. Connelly Food Products, Inc.*, 529 N.E.2d 1184, 1187 (Ill. 1988)).

[34]No. 1:02-CV-1405-LJM-WTL, 2003 WL 21508235, at *6 (S.D. Ind. June 24, 2003).

Indiana law, a court's primary objective is to ascertain the parties' mutual intention at the time they entered into the contract and to effectuate that intent."[35]

In Arizona, the purpose of contract interpretation is also to ascertain and enforce the parties' mutual intent.  In the present case, the court has found that the contract can be reasonably interpreted as giving Yashi II a license to sell Yashi Foods' products for at least 25 years, barring dissolution.  Similarly, Section 9.1 of the operating agreement can be reasonably interpreted as a manifestation of the parties' mutual intent to grant Yashi Foods the right to opt out of the licence after 25 years.  Although Yashi Foods is no longer able to vote on dissolution, which is technically the only procedural mechanism outlined in the contract for the ending the license, a fact question remains regarding whether the parties nonetheless intended for Yashi Foods to be able to opt out after 25 years.

## V.  CONCLUSION

Based on the preceding discussion, Yashi Foods' motion to dismiss at docket 9 is **DENIED**.

DATED this 25th day of November 2015.

/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE

---

[35] *Id.*